UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

FRANCESCO LOPEZ AVINA,

             Petitioner,

    v.

CURRENT OR ACTING FIELD OFFICE DIRECTOR, SAN FRANCISCO FIELD OFFICE, UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, ET AL.,

             Respondents.

No. 1:26-cv-00204 WBS SCR

ORDER DENYING PETITIONER'S MOTION FOR TEMPORARY RESTRAINING ORDER

----oo0oo----

Although represented by counsel, petitioner Francesco Lopez Avina has filed the instant motion for temporary restraining order pro se. (Docket No. 15.) Petitioner, a citizen of Mexico, entered the United States unlawfully and without inspection in 2000. (See Docket No. 1 at 5.) He has since been arrested for illegally purchasing a firearm in 2022, driving under the influence in 2022, and discharging a firearm in

2017.  (See Docket No. 11 at 2.)  Petitioner was also arrested in 2018 for using controlled substances and in 2019 for possessing a controlled substance.  (See Docket No. 11-1 at 3-6.)

On March 3, 2025, petitioner alleges that he was arrested outside his home by Immigration and Customs Enforcement officers and has since been in immigration detention.  (Docket No. 1 at 5-6.)  He filed the instant motion for temporary restraining order, in which he requests his immediate release from detention, over one year later.  (Docket No. 15 at 2.)

### Standard for Temporary Restraining Order

"The standard for a [temporary restraining order] is the same as for a preliminary injunction." Rovio Entm't Ltd. v. Royal Plush Toys, Inc., 907 F. Supp. 2d 1086, 1092 (N.D. Cal. 2012) (citing Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n.7 (9th Cir. 2001)).  Typically, "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).  The last two factors "merge when the Government is the opposing party." Nken v. Holder, 556 U.S. 418, 435 (2009).

Likelihood of success on the merits is "the most important factor in determining whether a preliminary injunction is warranted." Garcia v. County of Alameda, 150 F. 4th 1224, 1230 (9th Cir. 2025) (internal citations and quotation marks

2

omitted).  "[P]laintiffs seeking a preliminary injunction face a difficult task in proving that they are entitled to this extraordinary remedy."  Earth Island Inst. v. Carlton, 626 F.3d 462, 469 (9th Cir. 2010) (internal quotation omitted).  A mere possibility of success is insufficient to satisfy this factor; instead, a petitioner must demonstrate "a strong likelihood of success on the merits."  Save Our Sonoran, Inc. v. Flowers, 408 F. 3d 1113, 1120 (9th Cir. 2005).

### Background

This case, like the dozens of substantially similar cases this court has adjudicated in the last few months, "involves [the] pressing national problem . . . [of] unlawful aliens residing in our country," Certain Named & Unnamed Non-Citizen Child. & Their Parents v. Texas, 448 U.S. 1327, 1331 (1980).  The Supreme Court has long "noted" the "dimensions" of this "problem."  I.N.S. v. Delgado, 466 U.S. 210, 223 (1984) (Powell, J., concurring).  In 1984, then-recent estimates placed the number of unlawful noncitizens residing in the United States between 2 and 12 million, see id.; the government estimates that number has increased to "at least 15 million people" as of last year, Noem v. Vasquez Perdomo, 146 S. Ct. 1, 1 (2025) (Kavanaugh, J., concurring).

Additionally, prior to 1996, "an 'anomaly' existed 'whereby immigrants who were attempting to lawfully enter the United States were in a worse position than persons who had crossed the border unlawfully.'"  Chavez v. Noem, 801 F. Supp. 3d 1133, 1140 (S.D. Cal. 2025) (quoting Torres v. Barr, 976 F. 3d

918, 928 (9th Cir. 2020)). Specifically, the provisions of the Immigration and Nationality Act ("INA") were structured such that "non-citizens who had entered without inspection could take advantage of the greater procedural and substantive rights afforded in deportation proceedings, while non-citizens who presented themselves at a port of entry for inspection were subjected to more summary exclusion proceedings." Hing Sum v. Holder, 602 F.3d 1092, 1100 (9th Cir. 2010).

Against this troubled backdrop, Congress enacted the Illegal Immigration Reform and Immigration Responsibility Act of 1996 ("IIRIRA"). See Pub. L. No. 104-208, 110 Stat. 3009 (Sept. 30, 1996). IIRIRA "substantially amended the Immigration and Nationality Act of 1952 ('INA') and established a new summary removal process for adjudicating the claims of aliens who arrive in the United States without proper documentation." Smith v. U.S. Customs & Border Prot., 785 F. Supp. 2d 962, 965 (W.D. Wash. 2011), aff'd, 741 F.3d 1016 (9th Cir. 2014) (quotations omitted). Relevant here, IIRIRA provides that "[a]n alien present in the United States who has not been admitted or who arrives in the United States . . . shall be deemed . . . an applicant for admission," 8 U.S.C. § 1225(a)(1), and that such "applicant[s] for admission" are subject to mandatory detention, id. § (b)(2)(A). Thus, among other things, "IIRIRA amended the INA to make admission, not entry, the relevant criterion for removal procedures," Garibay-Robledo v. Noem, No. 1:25-cv-177-H, 2025 WL 3264482, at *4 (N.D. Tex. Sept. 15, 2025), putting an end to the above-described "anomaly," Chavez, 801 F. Supp. 3d at 1140.

4

"For many years" after the enactment of IIRIRA, "the understanding — shared by the Executive and the Supreme Court — was that [8 U.S.C. §] 1226, not [8 U.S.C. §] 1225, governed immigration arrests conducted within the interior of the United States." Bernal v. Albarran, No. 25-cv-09772 RS, 2025 WL 3281422, at *5 (N.D. Cal. Nov. 25, 2025).  The government endeavored to correct this understanding last year, when the Departments of Homeland Security ("DHS") and Justice issued a policy memorandum "requiring all 'applicants for admission' . . . to be mandatorily detained during removal proceedings pursuant to [8 U.S.C.] § 1225(b)(2)." Garcia v. Noem, --- F. Supp. 3d ----, 2025 WL 2549431, at *1 (S.D. Cal. Sept. 3, 2025) (citation omitted).  This memorandum further clarified that such noncitizens were "ineligible" for "bond hearing[s] before an immigration judge and may not be released for the duration of their removal proceedings absent a parole by DHS."  Id. (citation modified).  The Board of Immigration Appeals ("BIA") "subsequently" adopted DHS' new approach in a "reasoned opinion" concluding that "the practice of conducting bond hearings for aliens who entered the United States without inspection was not supported by the plain language or any reasonable interpretation of the INA."  Liang v. Almodovar, No. 1:25-cv-09322 MKV, 2025 WL 3641512, at *4 (S.D.N.Y. Dec. 15, 2025) (citation modified); see Matter of Yajure Hurtado, 29 I. & N. Dec. 216 (BIA 2025) (BIA decision).

DHS was entitled to change its interpretation of 8 U.S.C. § 1225 as it did last year.  Cf. Encino Motorcars, LLC v.

Navarro, 579 U.S. 211, 221 (2016) ("Agencies are free to change their existing policies as long as they provide a reasoned explanation for the change.").  This change appears to have been precipitated by circumstances which made it a practical necessity.  Approximately two months before issuing the policy memorandum, DHS noted that a "mass influx of aliens" was occurring, and that "[w]ithout controls in place . . .  to stem the influx," it would "lose[] its capacity to hold all aliens as required by the INA."  Finding a Mass Influx of Aliens, 90 Fed. Reg. 13622, 13623 (Mar. 25, 2025) (citing 8 U.S.C. § 1225(b)).  This influx "present[ed] urgent circumstances requiring an immediate federal response," id., and the policy memorandum issued shortly thereafter served precisely the function called for by those circumstances.

Statutory Framework

The court acknowledges at the outset the fluctuating and complex tangle of issues presented by DHS' recent shift in its approach to detention.  See, e.g., Echevarria v. Bondi, No. cv-25-03252 PHX DWL (ESW), 2025 WL 2821282 (D. Ariz. Oct. 3, 2025) (noting application of the statutes "as presenting a complicated and debatable question"); cf. Torres v. Barr, 976 F. 3d 918, 923 (9th Cir. 2020) ("The complex provisions of the INA have provoked comparisons to a 'morass,' a 'Gordian knot,' and 'King Minos's labyrinth in ancient Crete." (internal citations and quotation marks omitted)).

Here, recent decisions of other judges in the Eastern District of California have largely rejected the government's

6

interpretation of Section 1225(b)(2) as applicable to all "applicants for admission." See, e.g., Velasquez v. Chestnut, No. 1:26-cv-00576 DJC JDP, 2026 WL 263363, at *1 (E.D. Cal. Feb. 2, 2026); Crispin M. C. v. Noem, No. 1:25-cv-01487 KES HBK (HC), 2026 WL 70553, at *4-7 (E.D. Cal. Jan. 8, 2026); Singh v. Chestnut, No. 1:26-cv-00330 (HC), 2026 WL 249530, at *2 (E.D. Cal. Jan. 30, 2026).

Many decisions of district court judges elsewhere have also reached the conclusion that Section 1226(a), not Section 1225(b), provides the appropriate framework for noncitizens already residing in the United States. See, e.g., Perez v. Walsh, No. 1:25-cv-14995, 2026 WL 44777 (N.D. Ill. Jan. 7, 2026); Llanes Tellez v. Bondi, No. 25-cv-08982 PCP, 2025 WL 3677937, at *8 (N.D. Cal. Dec. 18, 2025); Ambroladze v. Maldonado, No. 26-cv-0473 (PKC), 2026 WL 295405, at *2 (E.D.N.Y. Feb. 4, 2026).

In contrast, the undersigned has repeatedly found that respondents' current interpretation of 8 U.S.C. § 1225 comports with that statute's plain text, whereas petitioner's interpretation (i.e. respondents' prior interpretation) does not. See, e.g., J.E.P.M v. WOFFORD, et al., No. 1:26-cv-00316 WBS CKD, 2026 WL 125270, at *2 (E.D. Cal. Jan. 16, 2026) (collecting this court's such cases). In a thorough opinion, the Fifth Circuit recently arrived at the same conclusion. See Buenrostro-Mendez v. Bondi, --- F.4th ----, 2026 WL 323330 (5th Cir. Feb. 6, 2026) (opinion of Jones, J.). The Eighth Circuit has recently reached the same result. See Avila v. Bondi, --- F.4th ----, 2026 WL 819258, at *1 (8th Cir. 2026).

8 U.S.C. § 1225(b)(2)(A) requires mandatory detention of "an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted."

A neighboring provision, 8 U.S.C. § 1225(a)(1), clarifies that "[a]n alien present in the United States who has not been admitted ... shall be deemed for purposes of this Act an applicant for admission."  The term "admission" is in turn defined "with respect to an alien" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer."  Id. § 1101(a)(13)(A) (emphasis added).  The inclusion of the word "lawful" in the foregoing definition is critical:  it expressly clarifies that an individual may only be considered "admitted" to the United States if their presence therein is with permission.

This definition comports with the plain meaning of the word "admit," which is defined in Merriam-Webster's Dictionary as "to allow entry (as to a place, fellowship, or privilege)." Admit, Merriam-Webster, https://www.merriam-webster.com/dictionary/admit (last visited Feb. 3, 2026) (emphasis added).  To construe the statute otherwise -- "that the mandatory detention provision of 1225 categorically does not apply to aliens who are present in the United States as a result of their illegal entry into the country" -- would "fl[y] in the face of defined statutory text" and contravene the plain meaning of the word "admit."  See Chen v. Almodovar, No. 1:25-cv-8350 MKV, 2025 WL 3484855, at *5 (S.D.N.Y. Dec. 4, 2025) (emphasis

8

added).

By contrast, 8 U.S.C. § 1226(a) states that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained" pending their final removal decision.  "Thus, one express requirement to fall within § 1226(a) — and the critical one here — is that the alien was arrested on a warrant issued by the Attorney General."  Vargas Lopez, 802 F. Supp. 3d 1132, 1139 (D. Neb. 2025).  Further, pursuant to the Laken Riley Act (the "Act"), subsection (c) of 8 U.S.C. § 1226 was amended to mandate detention for specific categories of noncitizens who have been charged with certain crimes.  See 8 U.S.C. § 1226(c)(1)(E); Pub. L. No. 119-1, § 2, 139 Stat. 3, 3 (Jan. 29, 2025) (Laken Riley Act).

The term "applicant for admission" in 8 U.S.C. § 1225 "functions as a legal designation -- describing an individual's legal status for purposes of the removal scheme."  Alonzo v. Noem, No. 1:25-cv-01519 WBS SCR, 2025 WL 3208284, at *4 (E.D. Cal. Nov. 17, 2025) (collecting cases).  And petitioner is subject to this legal designation because he is an "alien," 8 U.S.C. § 1225(a)(1), who is "present in the United States," id., and who "has not been admitted," id., since his entry into the United States was not a "lawful entry . . . after inspection and authorization by an immigration officer," id. § 1101(a)(13)(A).  See Mejia Olalde v. Noem, No. 1:25-cv-00168 JMD, 2025 WL 3131942, at *3 (E.D. Mo. Nov. 10, 2025).  Petitioner may not "elide[]" this legal designation as an "'applicant for admission' merely because he has already entered the United States."  Alonzo, 2025

9

WL 3208284, at *4; see also Chen, 2025 WL 3484855, at *4 (same conclusion).

Any reliance to the contrary on Jennings v. Rodriguez, 538 U.S. 281 (2018), is also misplaced.  Jennings did not declare unequivocally that 8 U.S.C. § 1225 does not apply in cases such as petitioner's.  Rather, the Supreme Court stated that 8 U.S.C. § 1225(b)(2) "serves as a catchall provision that applies to all applicants for admission not covered by" the more specific categories of § 1225(b)(1).  Jennings, 583 U.S. at 287; see also Vargas Lopez, 802 F. Supp. 3d at 1142 ("The Court concludes that the plain language of § 1225(b)(2) and the 'all applicants for admission' language of Jennings permit the DHS to detain [petitioner] under § 1225(b)(2).")  Moreover, the Court's introductory language in Jennings dispenses with any remaining doubt by clarifying that "an alien who 'arrives in the United States,' or 'is present' in this country but 'has not been admitted,' is treated as 'an applicant for admission.'"  Id.

This court's interpretation of 8 U.S.C. § 1225 also does not render the Laken Riley Act superfluous.  First, "Congress often takes a 'belt and suspenders' approach to legislation."  Mejia Olalde, 2025 WL 3131942, at *4 (quoting Atl. Richfield Co. v. Christian, 590 U.S. 1, 14 n.5 (2020)).

Second, the Laken Riley Act could not have been passed to affect the application of § 1225, for the simple reason that the Act was passed before respondents' current interpretation of 8 U.S.C. § 1225 was even issued.  The Act "could not therefore 'perform the work' of the [more] expansive reading of Section

10

1225, because that work had not yet been done." Valencia v. Chestnut, --- F. Supp. 3d ----, 2025 WL 3205133, at *4 (E.D. Cal. Nov. 17, 2025). See Buenrostro-Mendez, 2026 WL 323330, at *7 (noting that the Laken Riley Act was passed "at a time when the Executive was still declining to exercise its full enforcement authority under the INA").

Third, and regardless, DHS' current interpretation of the phrase "applicant for admission" as it appears in 8 U.S.C. § 1225 does not render the Act superfluous because "[t]he Attorney General may still exercise her detention discretion under § 1226(a) for any other aliens falling under that subsection who are not charged with the specific crimes carved out by" the Act. Chavez, 801 F. Supp. 3d at 1141.

"[A]n administrative agency is permitted to change its interpretation of a statute, especially where the prior interpretation is based on error, no matter how longstanding." Chisholm v. F.C.C., 538 F.2d 349, 364 (D.C. Cir. 1976). For that matter, "[y]ears of consistent practice cannot vindicate an interpretation that is inconsistent with a statute's plain text." Buenrostro-Mendez, 2026 WL 323330, at *8 (emphasis added). Rectifying prior error is precisely what occurred here. For the above reasons, the court again concludes that 8 U.S.C. § 1225 applies to petitioner.

## Procedural Due Process

Petitioner argues that his ongoing detention, which has spanned approximately thirteen months thus far, violates the Due Process Clause because it has no definite termination point.

11

(See Docket No. 15 at 2-3.)

As petitioner observes, "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem." Zadvydas v. Davis, 533 U.S. 678, 690 (2001). To date, however, every appellate court to have considered the constitutionality of a petitioner's prolonged detention has found that the length of such detention did not violate the Due Process Clause. See G.P. v. Garland, 103 F. 4th 898, 902 (1st Cir. 2024) (collecting cases). In each of those cases, the length of detention was significantly longer than petitioner's detention here. See id. at 899 (detention for approximately four years); Soberanes v. Comfort, 388 F.3d 1305, 1308 (10th Cir. 2004) (detention for approximately two years); Prieto-Romero v. Clark, 534 F. 3d 1053, 1056 (9th Cir. 2008) (detention for approximately three years); Castaneda v. Perry, 95 F. 4th 750, 753 (4th Cir. 2024) (detention for approximately five years); Martinez v. Larose, 968 F.3d 555, 558 (6th Cir. 2020) (detention for approximately two-and-a-half years).

Review of those cases reveals that, to determine if a petitioner's detention appears to be indefinite, courts consider whether: "(1) the petitioner's immigration proceedings have been infected with bad faith or undue delay by the agency; (2) the petitioner's detention is directly associated with a judicial review process that has a definite and evidently impending termination point, and is thus akin to detention during the administrative review process that was upheld by the Supreme Court; and (3) there is evidence that the petitioner is

12

unremovable because the destination country will not accept him or his removal is barred by our own laws." Uulu v. Warden, --- F. Supp. 3d ----, 2026 WL 412204, at *7 (E.D. Cal. Feb. 13, 2026) (citation modified).

Petitioner has not provided any evidence that his "immigration proceedings have been infected with bad faith or undue delay." Id. at *7. He was detained by immigration authorities on March 3, 2025, and immediately placed into removal proceedings. (Docket No. 17 at 3.) He then had a hearing before an immigration judge on December 2, 2025, the outcome of which he appealed. (Id.) These facts are incongruous with a determination that petitioner's immigration proceedings have been unduly delayed, and petitioner does not allege that these proceedings were infected with bad faith. See Uulu, 2026 WL 412204, at *7.

Further, petitioner's detention is "directly associated with a judicial review process," namely, the appeal of his initial immigration proceedings that petitioner himself chose to initiate. See id. Lastly, there is no evidence that petitioner is stuck in a "'removable-but-unreviewable limbo,'" as the petitioners in Zadvydas were." Prieto-Romero, 534 F. 3d at 1063. To the contrary, although petitioner's "detention lacks a certain end date, . . . this uncertainty alone does not render his detention indefinite in the sense the Supreme Court found constitutionally problematic in Zadvydas." Id. (emphasis in original).

For the above reasons, petitioner has failed to

13

demonstrate a likelihood of success on the merits of his procedural due process claim.  Thus, the court "need not consider the other preliminary injunction factors." California v. Azar, 911 F.3d 558, 575 (9th Cir. 2018).[1]

## Conclusion

It bears reiterating once more that Congress has given DHS the very difficult task of ensuring that the millions of aliens who are unlawfully within the United States are detained and removed as prescribed by law.  Indeed, "the Department of Justice Inspector General found in 1997 that when aliens are released from custody, nearly 90 percent abscond and are not removed from the United States," a "situation" that "exists today on a much larger scale." Buenrostro-Mendez v. Bondi, 2026 WL 323330, at *9 (citation modified).  It is not the courts' role to "judge the wisdom or desirability" of how DHS remedies that incongruence. Cf. Heller v. Doe by Doe, 509 U.S. 312, 319 (1993).  The methods and procedures by which noncitizens are detained undoubtedly involve intricate details which the courts lack the Constitutional authority or practical resources to

---

[1]    Nevertheless, the court observes that petitioner filed the instant motion on March 26, 2026, but was detained on March 3, 2025.  (See Docket No. 15.)  Petitioner's one-year filing delay in seeking injunctive relief "implies a lack of urgency and irreparable harm." See Oakland Trib., Inc. v. Chron. Pub. Co., 762 F.2d 1374, 1377 (9th Cir. 1985).  Indeed, "[c]ourts within this circuit have found that delays in seeking temporary restraining orders far shorter than petitioner's [four] month delay to counsel against a finding of irreparable harm." Singh v. Chestnut, No. 1:26-cv-00273 WBS DMC, 2026 WL 114268, at *1 (E.D. Cal. Jan. 15, 2026) (collecting cases).

dictate.

IT IS THEREFORE ORDERED that petitioner's motion for temporary restraining order (Docket No. 15) be, and the same hereby is, DENIED.

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local General Order No. 262, the case is referred to the assigned magistrate judge for further proceedings.

IT IS SO ORDERED.

Dated:  March 30, 2026

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

15