UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRANCISCO LOPEZ AVINA (A# 240-170-149),

Petitioner,

v.

CURRENT OR ACTING FIELD OFFICE DIRECTOR, SAN FRANCISCO FIELD OFFICE, UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, et al.

Respondents.

No.  1:26-cv-00204 WBS SCR

FINDINGS & RECOMMENDATIONS

Petitioner is a federal immigration detainee who filed this habeas corpus action pursuant to 28 U.S.C. § 2241.  The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

I.     **Factual and Procedural History**

Petitioner is a citizen and national of Mexico who is currently detained in the Golden State Annex Immigration Detention Facility, within this judicial district.  ECF No. 1 at 2.  Petitioner entered the United States without inspection in 2000.[1]  Id. at 5.  He has a criminal history that

---

[1] Respondents' answer references a "prior release in the discretion of DHS," ECF No. 11 at 2, but neither the petition nor petitioner's immigration records reflect such a release.  It appears that

1

includes multiple arrests and convictions.  ECF No. 11-1 at 2-7.

Immigrant and Customs Enforcement (ICE) agents arrested petitioner outside of his home on March 3, 2025.  ECF No. 1 at 5-6.  Immigration officials issued petitioner a notice to appear and administratively charged him as a noncitizen present without admission or parole under 8 U.S.C. § 1182(a)(6)(A)(i).  ECF No. 11-3 at 1.  Petitioner's Form I-213 reflects that ICE targeted him for arrest after deeming him a "Threat to Public Safety" based on his criminal history.  ECF No. 11-2 at 2.  An immigration judge ("IJ") ordered petitioner removed on December 2, 2025.  ECF No. 11-4.  Petitioner appealed the IJ's ruling to the BIA on January 2, 2026.  ECF No. 11-5.  Per petitioner's Executive Office of Immigration Review (EOIR) automated case information page (see https://acis.eoir.justice.gov/en/), that appeal is still pending.[2]

Petitioner, proceeding pro se, filed the instant § 2241 petition on January 12, 2026.  ECF No. 1.  Petitioner alleges that his ongoing, prolonged detention without a bond hearing violates the Due Process Clause of the Fifth Amendment.  Id. at 16-17.  Respondents oppose the petition and assert that petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2).  ECF No. 11.  While acknowledging petitioner's detention has exceeded six months, respondents argue that it is not unconstitutionally prolonged because his "detention fulfilled its purposes" and petitioner "has successfully completed his immigration proceeding."  Id. at 3.

The undersigned appointed counsel to petitioner due to the complexity of the legal issues.[3]  ECF No. 12.  In the counseled reply, petitioner asserts that his detention is governed by 8 U.S.C. § 1226(a) by virtue of his interior arrest on March 3, 2025.  ECF No. 19 at 1-2.  Petitioner further asserts that his criminal history has no bearing on whether he is subject to § 1226(a) versus §

petitioner's arrest on March 3, 2026, was his first interaction with immigration officials.

[2]  The undersigned takes judicial notice of petitioner's EOIR Case Information.  See Fed. R. Evid. 201(b)-(c) (Courts "may take judicial notice on its own" of facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

[3]  After the appointment of counsel but before appointed counsel filed a reply, petitioner filed a pro se motion for temporary restraining order ("TRO").  ECF No. 15.  District Judge Shubb denied the TRO motion, concluding that because petitioner had not demonstrated that his immigration proceedings had been infected with bad faith or undue delay by the government, he was unlikely to succeed on the merits of his procedural due process claim.  ECF No. 18 (citing, generally, Uulu v. Warden, No. 1:25-cv-01812-WBS-CKD, --- F. Supp. 3d ----, 2026 WL 412204, at *7 (E.D. Cal. Feb. 13, 2026)).

1225(b).  Id. at 7-8.  Even if the Court finds petitioner is subject to § 1225(b), petitioner argues that his year-long detention without a bond hearing still violates due process.  Id. at 6-7.

## II.   Legal Standards

### A.  Constitutional Standards

The undersigned has followed the majority viewpoint in this Circuit that the arrest and detention of noncitizens like petitioner who have resided in the United States for many years is governed by 8 U.S.C. § 1226(a).  See Tinoco v. Chestnut, No. 1:26-cv-0150 WBS SCR, 2026 WL 523187, at *4-*7 (E.D. Cal. Feb. 24, 2026).  However, as explained below, the undersigned agrees with petitioner that the Court need not resolve the statutory authority for his detention to rule on the petition because petitioner retains due process rights regardless of whether § 1226(a) or § 1225(b) applies.[4]

The Supreme Court has held that "the Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent."  Zadvydas v. Davis, 533 U.S. 678, 693 (2001).  Similarly, Ninth Circuit precedent holds that the Due Process Clause applies to noncitizens regardless of whether they are "seeking admission" or are "admitted" under immigration law.  Wong v. United States, 373 F.3d 952, 973 (9th Cir. 2004), abrogated on other grounds by Wilkie v. Robbins, 551 U.S. 537 (2007); see also Padilla v. U.S. Immigr. & Customs Enf't, 704 F. Supp. 3d 1163, 1171-72 (W.D. Wash. 2023) (finding that the plaintiffs who were detained under § 1225(b)(1) adequately alleged a right under "substantive due process to bond hearings" because "the Supreme Court has consistently held that non-punitive detention violates the Constitution unless it is strictly limited,

---

[4]  Moreover, because petitioner appealed the IJ's removal order to the BIA, his removal order is not administratively final and his detention has not yet shifted to 8 U.S.C. § 1231(a).  See Avilez v. Garland, 69 F.4th 525, 531 (9th Cir. 2023) (The 90-day 'removal period" under § 1231(a)(1)-(2) begins on the latest of either (1) the date a noncitizen's 'order of removal becomes administratively final,' (2) the date of a court's final order, if the noncitizen's removal order is judicially reviewed and [the Ninth Circuit Court of Appeals] stays the noncitizen's removal, or (3) the date the noncitizen is released from criminal detention or confinement.") (quoting 8 U.S.C. § 1231(a)(1)(B)(i)-(iii)).  An order of removal becomes final "only upon the earlier of (i) a BIA determination affirming the order or (ii) the expiration of the deadline to seek the BIA's review of the order."  Ocampo v. Holder, 629 F.3d 923, 926 (9th Cir. 2010) (citing 8 U.S.C. § 1101(a)(47)(B)).

and, typically, accompanied by a prompt individualized hearing before a neutral decisionmaker to ensure that the imprisonment serves the government's legitimate goals"); Rosales-Garcia v. Holland, 322 F.3d 386, 412 (6th Cir. 2003) (en banc) ("If excludable [non-citizens] were not protected by even the substantive component of constitutional due process, ... we do not see why the United States government could not torture or summarily execute them. ... [W]e conclude that government treatment of excludable [noncitizens] must implicate the Due Process Clause of the Fifth Amendment.").  The Due Process Clause "protects individuals against two types of government action: violations of substantive due process and procedural due process." United States v. Quintero, 995 F.3d 1044, 1051 (9th Cir. 2021) (internal quotation omitted).  As a matter of substantive due process, governmental action may only infringe a fundamental right if "the infringement is narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302 (1993).

Courts examine procedural due process claims in two steps: the first step is determining whether there exists a protected liberty interest under the Due Process Clause.  The second step examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.  See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").  In deciding what process is due to immigration detainees, the Ninth Circuit has assumed, without deciding, that the three-part test articulated in Mathews v. Eldridge, 424 U.S. 319 (1976), applies.  See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206-07 (9th Cir. 2022).  Under Mathews, the court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest involved including any fiscal or administrative burden that additional procedures would include.  Mathews, 424 U.S. at 335.

An as-applied challenge "contends that the law is unconstitutional as applied to the litigant's particular [circumstances], even though the law may be capable of valid application to others." Foti v. City of Menlo Park, 146 F.3d 629, 635 (9th Cir. 1998) (citation omitted).

////

**III.    Procedural Due Process Analysis**

**A.  The TRO Decision**

Before turning to the procedural due process analysis, the undersigned recognizes that District Judge Shubb denied petitioner's pro se TRO on due process grounds.  However, Judge Shubb analyzed and decided only whether petitioner is entitled to immediate release because his detention has become prolonged and indefinite.  Specifically, Judge Shubb applied the test he developed in Uulu v. Warden, --- F. Supp. 3d ---, 2026 WL 412204 (E.D. Cal. Feb. 13, 2026):

> [T]o determine if a petitioner's detention appears to be indefinite, courts look to whether: (1) the petitioner's immigration proceedings have been infected with "bad faith or undue delay by the agency," (2) the petitioner's detention is "directly associated with a judicial review process that has a definite and evidently impending termination point," and is thus "akin to detention during the administrative review process [that] was upheld [by the Supreme Court] in [Demore] (3) there is "evidence that [the petitioner] is unremovable because the destination country will not accept him or his removal is barred by our own laws . . ..

ECF No. 18 at 12-13 (quoting Uulu, 2026 WL 412204, at *7) (internal quotations and citations omitted).

The undersigned respectfully believes that the Uulu test is not the appropriate one for determining whether petitioner should be granted a bond hearing—as opposed to immediate release—where his detention has become prolonged.  The Ninth Circuit has recognized that "'indefinite and potentially permanent' civil detention . . . clearly pose[s] serious *substantive* due process concerns."  Prieto-Romero v. Clark, 534 F.3d 1053, 1064 (9th Cir. 2008) (citing Zadvydas, 533 U.S. at 696) (emphasis added).  The question the undersigned addresses is not whether petitioner's detention appears to be "indefinite," but whether his mandatory detention of approximately 13 months without a fair detention hearing violates *procedural* due process.  Courts regularly entertain such as-applied, procedural due process claims despite the Supreme Court's finding in Demore v. Kim, 538 U.S. 510, 529 (2003), that detention during removal proceedings has a "definite termination point."  See Black v. Decker, 103 F.4th 133, 149 (2d Cir. 2024) ("Demore upheld the government's authority under section 1226(c) to detain noncitizens without an initial bond hearing for the brief period necessary for their removal proceedings. It said nothing about whether due process may *eventually* require a hearing.") (internal quotations

and citations omitted) (emphasis in original); Nielsen v. Preap, 586 U.S. 392, 420 (2019) (authorizing as-applied constitutional challenges to mandatory detention under § 1226(c)); Demore, 538 U.S. at 532-33 (2003) (Kennedy, J., concurring) (contemplating such as-applied challenges).

In sum, while prolonged *and* indefinite detention is necessary to show entitlement to outright release under the Zadvydas framework, prolonged detention—even if not indefinite— may be sufficient to require a detention hearing.  See Lopez v. Garland, 631 F. Supp. 3d 870, 877 (E.D. Cal. 2022) ("[E]ssentially all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process.") (quotation omitted).  With this framework in mind, the undersigned turns to the procedural due process analysis.

### B.  Mathews Analysis

In reviewing petitioner's due process challenge, the Court turns first to the question of whether petitioner has a protected liberty interest from prolonged detention during his removal proceedings.  While petitioner's immigration case will at some point have a "definite termination point," there is no clear end in sight to his ongoing detention, which has now lasted for more than 13 months.  See Chen v. Aitken, 917 F. Supp. 2d 1013, 1018 (N.D. Cal. 2013) (holding petitioner's seven-month detention under § 1225(b) was "prolonged" because it "has lasted well beyond the typical period described in Demore" and "neither release nor removal are imminent").  The record does not provide this Court with any time frame in which petitioner's removal proceedings will ultimately be resolved.  Petitioner appealed his removal order to the BIA in January 2026, which suggests that he "faces an undetermined, but likely significant, period of mandatory detention through the appeals process."  Gao v. LaRose, 805 F. Supp. 3d 1106, 1111 (S.D. Cal. 2025); see also Lopez, 631 F. Supp. 3d at 880–81 (finding petitioner's administrative appeals and possible appeal to the Ninth Circuit "will be sufficiently lengthy" to weigh toward granting request for bond hearing).  Therefore, in such circumstance, even mandatory detention statutes like § 1225(b) and their implementing regulations are subject to constitutional limitations on an as-applied basis.  See, e.g., Nielsen v. Preap, 586 U.S. at 420; Demore, 538 U.S. at 532-33

(Kennedy, J., concurring).  Accordingly, the undersigned finds that petitioner has a protected liberty interest and may invoke the Due Process Clause to seek protections against prolonged detention in his individualized circumstances.[5]

Having so found, the Court applies the Mathews framework to determine whether petitioner is entitled to a bond hearing during the pendency of his removal proceedings.  See Rodriguez Diaz, 53 F.4th at 1206-07 (assuming without deciding that the Mathews standard applies to a due process challenge to a non-citizen's ongoing detention).

### 1.  Private Interest

Turning to the first factor in Mathews, petitioner has a strong liberty interest in avoiding prolonged detention without any bond hearing before a neutral arbiter.  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."  Zadvydas, 533 U.S. at 690. Petitioner has been detained for 13 months.  Compared to the six-month presumptive period set forth in Zadvydas, beyond which continued detention becomes prolonged, petitioner's detention qualifies as prolonged.  See Zadvydas, 533 U.S. at 701; Tigranyan v. Warden of California City Det., No. 1:25-cv-1554 DJC SCR, 2026 WL 91765 (E.D. Cal. Jan. 13, 2026) (finding a 14 month detention under § 1225(b) qualified as prolonged), report and recommendation adopted, No. 1:25-cv-1554 DJC SCR, 2026 WL 130843 (E.D. Cal. Jan. 16, 2026).  An individual's private interest in "freedom from prolonged detention" is "unquestionably substantial."  Singh v. Holder, 638 F.3d 1196, 1208 (9th Cir. 2011); see also Lopez, 631 F.Supp.3d at 880 ("As detention continues past a year, courts become extremely wary of permitting continued custody absent a bond

---

[5]  Respondents briefly argue that petitioner "does not possess a right to freedom from immigration detention in any form other than the form provided by Congress."  ECF No. 11 at 2 (citing Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 212 (1953)).  However, Shaughnessy and its progeny, particularly Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103 (2020), are materially distinguishable from this case.  The Supreme Court's discussion of due process in Thuraissigiam "is necessarily constrained to challenges to admissibility to the United States" and "[t]he Court answered no broader question."  Padilla, 704 F. Supp. 3d at 1171-72.  Neither Shaughnessy nor Thuraissigiam "foreclose . . . due process claims which seek to vindicate a right to a bond hearing with certain procedural protections."  Padilla, 704 F. Supp. 3d at 1172. Moreover, unlike the petitioners in those other cases, petitioner has been living in the United States for decades and was not apprehended at the border while seeking to enter the United States.

hearing.") (internal citation omitted).

Petitioner's pursuit of an appeal to the BIA does not undercut his private interest. See Lopez, 631 F.Supp.3d at 882 ("[T]he fact that Petitioner chose to pursue [an application for relief] and requested continuances to further that application does not deprive him of a constitutional right to due process."); see also German Santos v. Warden Pike Cnty. Corr. Facility, 965 F.3d 203, 211 (3d Cir. 2020) ("[W]e do not hold a[ noncitizen's] good-faith challenge to his removal against him, even if his appeals or applications for relief have drawn out the proceeding."). Despite being in custody for more than 13 months, there is no clear end date for petitioner's detention. For all these reasons, the first Mathews factor tilts in favor of petitioner.

### 2.  Risk of Erroneous Deprivation

"[T]he risk of an erroneous deprivation of liberty in the absence of a hearing before a neutral decisionmaker is substantial." Diouf v. Napolitano, 634 F.3d 1081, 1092 (9th Cir. 2011), abrogation on other grounds recognized by Rodriguez Diaz, 53 F.4th at 1201; see also Rodriguez v. Marin, 909 F.3d 252, 256 (9th Cir. 2018) (expressing "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional"). In petitioner's case, even assuming he is subject to detention under § 1225(b), a bond hearing is a critical procedural safeguard because it provides both the non-citizen and the government with an opportunity to present evidence and to be heard by a neutral adjudicator.  This factor under Mathews also favors petitioner.

### 3.  Government's Interest

Under this factor, the Court weighs the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail." Mathews, 424 U.S. at 335.  The undersigned recognizes that "the government has a strong interest in effecting removal, and in protecting the public from danger." Maksim v. Annex, No. 1:25-cv-0955 SKO (HC), 2025 WL 2879328, at *5 (E.D. Cal. Oct. 9, 2025) (citations omitted).  "[H]owever, the key government interest at stake here is not the continued detention of Petitioner, but the government's ability to detain him without a bond hearing." Id. (citation and quotation omitted).  Thus, "[p]roviding a bond hearing would not undercut the government's

asserted interest in effecting removal.  After all, the purpose of a bond hearing is to inquire whether the [non-citizen] represents a flight risk or danger to the community." Jimenez v. Wolf, No. 19-CV-7996 NC, 2020 WL 510347, at *3 (N.D. Cal. Jan. 30, 2020) (citing In re Guerra, 24 I.&N. Dec. 37 (B.I.A. 2006)); see also Velasco-Lopez v. Decker, 978 F.3d 842, 854 (2d Cir. 2020).  Moreover, petitioner's individual request for a bond hearing involves a minimal fiscal and administrative burden.  See Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) ("The effort and cost required to provide Petitioner with procedural safeguards is minimal[.]").  In sum, this factor also weighs in favor of petitioner.

In light of this Mathews analysis, the undersigned recommends that the petition for a writ of habeas corpus be granted on its sole procedural due process claim and respondents be ordered to provide petitioner a bond hearing before an IJ within five days where the IJ must order petitioner released unless petitioner is found by the IJ to constitute a risk of flight or danger to the community by clear and convincing evidence.  See Maksim, 2025 WL 2879328, at *6 (adopting clear and convincing evidence burden in similar circumstance); Singh, 638 F.3d at 1204 ("[D]ue process places a heightened burden of proof on the State in civil proceedings in which the individual interests at stake . . . are both particularly important and more substantial than mere loss of money.").

## CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1.      Petitioner Francisco Lopez Avina's (A# 240-170-149) application for a writ of habeas corpus (ECF No. 1) be granted.

2.      Respondents be ordered to provide petitioner with a bond hearing before an IJ within five (5) days of any order adopting these findings and recommendations where the IJ must order petitioner released unless petitioner is found by the IJ to constitute a risk of flight or danger to the community by clear and convincing evidence.

3.      Within 3 days from the date of the bond hearing, respondents be directed to file a notice in this court certifying compliance with the above provision.

4.      This order does not address the circumstances in which respondents may detain

9

petitioner in the event petitioner becomes subject to an executable final order of removal and Petitioner receives notice of that final order of removal.

5.   The Clerk of Court be directed to enter judgment in favor of petitioner and to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs.  See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: April 28, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE